Cathy L. Arias, State Bar No. 141989
Michelle D. Jew, State Bar No. 208853
Patrick M. Callahan, State Bar No. 219419
Arthur S. Gaus, State Bar No. 289560
BURNHAM BROWN
A Professional Law Corporation
P.O. Box 119
Oakland, California 94604
---
1901 Harrison Street, 14th Floor
Oakland, California  94612
Telephone:     (510) 444-6800
Facsimile:     (510) 835-6666
Email: carias@burnhambrown.com
       mjew@burnhambrown.com
       pcallahan@burnhambrown.com
       agaus@burnhambrown.com

Attorneys for Defendant
STARBUCKS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NEIL B. GOODHUE, Trustee of the Sandrigham Trust UTD August 4, 1999; DIANE C. GOODHUE, Trustee of the Sandringham Trust UTD August 4, 1999; EDWARD MAURICE PLANT III, Trustee of the Woodbury Drive Revocable Trust of 1999 dated March 4, 1999; STARBUCKS CORPORATION, a Washington Corporation; and DOES 1-10,<br><br>　　　　Defendants. | No. 4:16-cv-00724-DMR<br><br>**DEFENDANT STARBUCKS CORPORATION'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND TO REOPEN DISCOVERY**<br><br>**Complaint filed: February 12, 2016** |

## I. INTRODUCTION

Starbucks brought this motion to amend this Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment based on newly discovered evidence that establishes facts critical to whether Plaintiff has standing to bring the claims he alleges in his complaint: **1)** Plaintiff sent agents into a businesses on his behalf in the past, and has continued to do so as recently as July 2018; **2)** Plaintiff visited dozens of other businesses in the Danville area on the dates he claims he visited or conducted a drive-by at the Starbucks at issue in this case; and **3)** Plaintiff has maintained intake forms detailing his visits to the Starbucks at issue in this case, but refused to produce them <u>or</u> disclose their existence in a privilege log.

Plaintiff's Opposition largely chooses to ignore these facts and instead selectively reimagines the parties' September 10, 2018 evidentiary hearing conducted by the Honorable Joseph Alsup in *Johnson v. Centercal, LLC et al* 3:17-CV-02454-WHA ("September 10 Hearing") in a manner that is both disingenuous and directly at odds with Judge Alsup's orders following the hearing. The Court should not be swayed by Plaintiff's relentless obfuscation and should grant the instant motion.

## II. ARGUMENT

**A. Plaintiff's Past Patronage Of A Business And His Intent To Return Are Elements Of Standing In Title III ADA Cases; Plaintiff's Document Production, Corroborated By The Testimony Of His Employees Support Starbucks' Challenge to Plaintiff's Standing In This Case**

"Mr. Johnson has standing to seek the fix", states Plaintiff's Motion for Summary Judgment. "Starbucks is conveniently located. Once the violations are removed, Mr. Johnson will return and continue to patronize the Starbucks often." [Motion p. 14, ln 4-15] This was the *entire basis* for Plaintiff's claim of standing when this Court considered Plaintiff's motion for summary judgment. But, at the time briefing on the motion concluded neither Starbucks nor this Court knew about Plaintiff's general business practices, the existence of contemporary intake forms, or the number of businesses he visited on the same dates he claims to have visited the Starbucks at issue in this case. Consequently, Starbucks had no basis to dispute Plaintiff's standing. This Court's Order granting Plaintiff's summary judgment motion in part reflects the

absence of this dispute. [October 17, 2018 Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, ECF Dkt. No. 129 p. 10, ln 20-22]

Plaintiff argues that his motivation for visiting the Starbucks at issue in this case is irrelevant, and that so long as he proclaims himself to be vindicating his rights under the ADA, he has standing to bring suit against any public accommodation if he has knowledge of perceived ADA barriers and so much as *contemplates* visiting the business. [Opposition p. 13, ln 8—14, ln. 2] However, Plaintiff's citation to *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust* (9th Cir. 2017) 867 F.3d 1093, 1102 for that proposition is does not withstand scrutiny. [Opposition p. 13, ln 8-21] The suggestion that Plaintiff is a "tester," was never raised prior to this motion. In addition, while *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust* does state that "tester" status does not *deprive* a litigant of standing, it does not, by itself, *confer* standing. A person bringing suit under Title III of the ADA for injunctive relief must still demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 1098. This is particularly true when, as here, Plaintiff is a serial litigator of Title III ADA cases. These cases warrant a complete and thorough examination of Plaintiff's standing. "[G]iven the trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted." *Vogel v. Sym Properties, LLC* (C.D. Cal., Aug. 4, 2017, No. CV 15-09855-AB (ASX)) 2017 WL 4586348, at *2 quoting *Harris v. Stonecrest Care Auto Center, LLC* (S.D. Cal. 2007) 472 F.Supp.2d 1208, 1215. Thus, to establish standing in a Title III ADA case—even where Plaintiff claims to be a "tester"—Plaintiff must show that he suffered "[A]n injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Harris v. Stonecrest Care Auto Center, supra* at 1215.

///

///

///

**1. Standing In Title III ADA Cases Demands An Analysis Of Plaintiff's Past Patronage Of The Business At Issue And His Intent To Return; Plaintiff's Summary Judgment Motion And Opposition Ignore This Requirement**

An analysis of a Plaintiff's past patronage of a business and the likelihood of his professed intent to return is an essential component of the Title III ADA standing analysis. "Both actual injury, which includes deterrence and causation in its definition, and imminent injury, which includes a threat of future harm, require, at the very least, <u>that a plaintiff be likely to return to patronize the accommodation in question</u>." *Id.* at 1216 [Emphasis added]. "In determining whether a plaintiff's likelihood of returning to a particular establishment is sufficient to confer standing [under the ADA], courts have examined factors such as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definiteness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the accommodation in question." *Barrilleaux v. Mendocino County* (N.D. Cal., July 26, 2018, No. 14-CV-01373-DMR) 2018 WL 3585133, at *27 quoting *Harris v. Stonecrest Care Auto Center, LLC* (S.D. Cal. 2007) 472 F.Supp.2d 1208, 1216. In addition, "[A]s the distance between the plaintiff's residence and the public accommodation increases, the likelihood of future harm decreases. When the distance between the two is significant, especially if it is in excess of 100 miles, courts have consistently held that it weighs against finding a reasonable likelihood of future harm." *Molski v. Mandarin Touch Restaurant* (C.D. Cal. 2005) 385 F.Supp.2d 1042, 1045.[1] Plaintiff's Opposition does not—and cannot— refute the fact that the evidence Starbucks discovered after Plaintiff's Motion for Summary Judgment was fully briefed raises significant questions about Plaintiff's past patronage of the Starbucks at issue in this case and his intent to return.

**2. The Testimony Of Plaintiff's Former Employees, And The Disclosures Made In Compliance With The September 11 And 24 Orders Provided New Facts That Call Plaintiff's Standing Into Question And Directly Contradict Plaintiff's Own Testimony**

In addition to skirting the issues material to this motion, Plaintiff's selective recounting of the testimony and the Court's comments at the Parties' September 10 Hearing wholly ignores

---

[1] The Starbucks location at issue in this case is approximately 98 miles from Plaintiff's home in Carmichael, CA.

the outcome, chiefly that: (1) Judge Alsup <u>ordered the production to Starbucks of intake forms reflecting visits to Starbucks, and lists of businesses Plaintiff visited on the dates at issue in that case; and (2) The order was intended to resolve questions about Plaintiff's standing</u>. [September 11 Order, *Johnson v. Centercal, LLC et al* 3:17-CV-02454-WHA, ECF Dkt No. 71 ("September 11 Order"), p. 2, ln 10-20] As much as Plaintiff wishes otherwise, the testimony of Plaintiff's former employees was sufficient to raise questions about Plaintiff's standing and overall credibility, and the testimony of Plaintiff's current employee, Julie Ann Leilani Milo did nothing to answer those questions.[2]

### 3. The Testimony Of Plaintiff's Former Employees Addresses Plaintiff's Practice Of Sending Agents Into Starbucks; This Testimony Is Directly Relevant To Plaintiff's Past Patronage Of This Starbucks And His Intent To Return

Plaintiff's selective excerpting of September 10 Hearing cannot obscure the fact that <u>all</u> of Plaintiff's former employees testified that Plaintiff would send them into businesses on his behalf to make a purchase and collect a receipt. [Opposition p. 5, ln 18-19, p. 7, ln 2-7, p. 10, ln 5-7] Although, the testimony specifically refers to events that predate this case, it is still relevant in that, as noted by Judge Alsup's September 24 Order after the Court's *in camera* review ("September 24 Order"), [*Johnson v. Centercal, LLC et al,* ECF Dkt No. 77], Plaintiff has persisted in this practice as recently as July 2018. This testimony is also probative of the credibility of Plaintiff's receipts and photographs, which are put forth as evidence of his visits to the Starbucks location, but do not actually establish his physical presence therein.[3] Try as Plaintiff might, he cannot obscure the fact that these revelations call into question his past patronage of this Starbucks and were discovered only after Plaintiff's summary judgment motion was fully briefed.

---

[2] For example, Plaintiff's Opposition contends that Plaintiff's business practices were exonerated by the testimony of his current employee Julie Ann Leilani Milo. Not so. Ms. Milo may have testified that Plaintiff does all visits himself and that she has no doubt about it. [Opposition p. 11, ln 9-16] However, Judge Alsup's order after *in camera* review makes it clear that this particular testimony lacks credibility. In ordering the production of additional intake forms memorializing visits on December 16, 2016, March 8, 2016 and July 18, 2018 Judge Alsup noted "These three intake forms tend to indicate that someone other than plaintiff purchased an item and obtained a receipt in connection with plaintiff's visits to Starbucks store." [September 24 Order, p. 1, ln 20-27]

[3] Plaintiff's receipts and photographs establish that *someone* went into the Starbucks at issue in this case, but do not carry any indicia that Plaintiff himself did so.

### (a) The Court's September 24 Order And Plaintiff's Production In Response Establish That Plaintiff's Practice Of Sending Agents Into Starbucks Is Ongoing

Plaintiff's Opposition presents the testimony of Plaintiff's former employees as irrelevant because it concerns Plaintiff's practices from some time ago and have no bearing on the time period at issue in this case. [Opposition p. 5, ln. 5-7] This is irreconcilable with Plaintiff's production in response to the September 24 Order. Plaintiff's production of documents in compliance with the Court's September 24 Order makes clear that Plaintiff sent agents into Starbucks locations as recently as July 18, 2018. This production also demonstrates that Plaintiff sent agents into Starbucks locations in 2016, which suggests that this practice was ongoing during or near the period at issue in this case. In addition to raising questions about whether Plaintiff actually ever personally visited the Starbucks at issue in this case, these disclosures raise questions about whether or not Plaintiff intends to return to this Starbucks.

### (b) i. Plaintiff's Lists Of Visits To Businesses Raise Significant Questions About His Past Patronage Of The Starbucks And Directly Contradict His Testimony Relating To His Travel To The Danville Area

Plaintiff's list of businesses he visited in the Danville area on dates he claims to have visited the subject Starbucks in this case includes as many as 81 other businesses he "visited" and excludes the businesses he merely drove by. Plaintiff explains his refusal to disclose his "drive-bys" at the Starbucks at issue in this case by claiming that he was not required to disclose his "drive-by" visits because they do not, for lack of better term, "count." [Opposition p. 2, ln 10—p. 4, ln 22] Plaintiff's novel tabulation of his "visits" and "drive-bys" to dozens of businesses furthers the notion that Plaintiff's proffered reasons for his travel to Danville are plainly not credible.

Plaintiff testified in deposition that his visits to the Starbucks at issue in this case are incidental to his visits to the Blackhawk Museum, to look for real estate in the area, and to enjoy the scenery. He does not have any family or close friends in the area.

```
25 Q. Do you have any family in this area?
 1 A. No.
 2 Q. Do you have any close friends in the area?
 3 A. No.
```

[Deposition of Scott Johnson, p. 119, ln 25—p. 120, ln 5]
***
Q. Okay. You were -- there's nine days between
17 those two visits, March 13 and March 22. … it just seems odd that you would travel
19 from your home to Danville, California, so close together
20 and you have no recollection of why you were in the area.
21 Were you out looking for locations to sue?
22 A. No. There is a Blackhawk auto museum in Danville
23 that I go to.
24 Q. How frequently do you go?
25 A. During this time frame, I went quite frequently
[Deposition of Scott Johnson, p. 120, ln 16-25]
***
18 Q. Other than the Blackhawk Museum, what else do you
19 visit in the Danville/San Ramon area?
20 A. At that point in time, I was looking for real
21 estate in that -- that area.
[Deposition of Scott Johnson, p. 122, ln 18-21]
***
Q. What else do you do in the Danville/San Ramon
3 area?
4 A. Basically, just shop and take in the -- the
5 bistros and -- you know, it's a nice area, Danville and
6 Alamo and Walnut Creek.
7 Q. So you're a tourist?
8 A. Yes. I like to get out of Sacramento.
[Deposition of Scott Johnson, p. 123, ln 2-8]

Plaintiff's disclosures, made after this motion was fully briefed—tell quite a different story. By Plaintiff's own tabulations these disclosures show that he was in Danville to *visit* as many as 81 businesses in a day and *drive by* an untold number of others all for purposes of his ADA litigation. Given these numbers, it is not speculative to consider the probability that Plaintiff's trips to the Danville area consist of nothing more than Plaintiff driving around in his van, compiling lists of businesses to sue and claiming "deterrence" when he cruises through a parking lot without stopping. The discord between Plaintiff's testimony, coupled with his dissembling explanation as to his purported compliance with Judge Alsup's September 11 Order, raises an inference that Plaintiff's proffered reasons for his past patronage of the Starbucks at issue in this case are a sham. Specifically, these facts raise an inference that Plaintiff's patronage of this Starbucks is not incidental to a legitimate sightseeing trip to Danville, but are instead part of Plaintiff's commercialized ADA litigation wherein he has no genuine purpose for visiting this—or any—Starbucks location *other than* to sue it for purported ADA violations and has no interest in returning to this location if there are no ADA barriers that can supply the basis for a

lawsuit.

### 4. The Newly Discovered Facts Also Raise Issues Concerning Plaintiff's Standing and Damages under Unruh

#### (a) The New Facts Call Into Question Whether Plaintiff Was In Fact Victimized By A Discriminatory Act

In addition to raising triable issues concerning Plaintiff's standing under Unruh. California courts interpreting the Unruh Act have "[C]onsistently held that an individual plaintiff has standing to bring claims thereunder only if he or she has been the victim of the defendant's discriminatory act." *Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414, 419. The California Supreme Court has noted that plaintiff cannot sue under Unruh for "[D]iscrimination in the abstract, but must actually suffer the discriminatory conduct."*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 165. Plaintiff's "proof" that he was in fact victimized by Starbucks discriminatory acts are receipts and photographs that carry no indicia that it is Plaintiff himself in the Starbucks location at issue. Viewed in the context of the newfound evidence, chiefly that Plaintiff has sent agents into Starbucks stores on his behalf to collect receipts, these receipts and photos look nothing like "proof" of Plaintiff's encounter with the alleged barriers and fail to demonstrate that Plaintiff actually encountered the alleged barriers. Accordingly, there is a triable issue of fact as to Plaintiff's standing under Unruh.

#### (b) The New Facts Raise Issues Concerning Plaintiff's Entitlement to Statutory Damages Under Unruh

Similarly, the new facts in this case call into question Plaintiff's entitlement to statutory damages. Primarily because if Plaintiff did not encounter the alleged barrier, he is not entitled to statutory damages. *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1410. However, Plaintiff's practice of visiting as many as 81 businesses in a day while driving around Danville on the dates he claims to have visited the Starbucks at issue in this case call into question the reasonableness of his conduct, which is a component of a damages calculation under Unruh by the plain language of the statute. "In an action alleging multiple claims for the same construction-related accessibility violation on different particular occasions, the court shall consider the reasonableness of the plaintiff's conduct in light of the plaintiff's obligation, if any, to mitigate

damages." Civ. Code, § 55.56(i). Plaintiff's produced lists of businesses he visited on the dates he visited the Starbucks at issue in this case permit a more thorough evaluation of Plaintiff's reasonableness on this issue.

**B. The Intake Forms Are Business Records And Not Covered By Any Privilege; They Were Never Shown To Have Been Communicated To Counsel And Contain No Legal Analysis Whatsoever**

Plaintiff offers a partial recitation of FRCP 26(b)(3)(A) to support a conclusion that Plaintiff's intake forms are not discoverable by virtue of privilege. [Opposition p. 2, ln 4-8] Plaintiff failed to include these materials in a privilege log when providing disclosures and responding to discovery. Nonetheless, Plaintiff's underlying assumption is entirely incorrect; Plaintiff's intake forms are not covered by any privilege. In addition, to the extent any privilege ever existed it has been waived by Plaintiff's failure to produce a privilege log.

**1. Plaintiff's Intake Forms Are Not Privileged**

**(a) Plaintiff's Notes Are Not Covered By Attorney Client Privilege**

The attorney-client privilege applies to communications *between lawyers and their clients* when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. *U.S. v. Chen* (9th Cir. 1996) 99 F.3d 1495, 1501. Plaintiff admitted that his notes were not communications to his attorney:

```
3    Q. You've never shared those notes with your -- your
4·   attorney; correct?
5    A. Not the physical note itself.  I've shared the
6 information from the notes, but not the physical note
7 itself.
```
[Deposition of Scott Johnson, p. 13, ln 3-7]

**(b) Plaintiff's Notes Are Not Covered By Work-Product Doctrine**

Similarly, there is no basis for Plaintiff shield his notes from discovery under the attorney work-product doctrine. The work-product doctrine is a qualified protection for a limited class of materials that reveal an <u>attorney's</u> strategy, intended lines of argument, and internal deliberations. Fed.R.Civ.P. 26(b)(3), *Hickman v. Taylor* 329 U.S. 495, 511. However, Rule 26(b)(3)(A)(ii) specifically excludes from the work-product doctrine materials when a party

demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." "A substantial need for work product materials exists where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *National Congress for Puerto Rican Rights v. City of New York* (S.D.N.Y. 2000) 194 F.R.D. 105, 110. Assuming, *arguendo,* that the notes are attorney work product, Plaintiff's notes fall squarely into this exclusion. The intake forms may provide evidence of Plaintiff's visits to the Starbucks, his contemporary impressions of the perceived barriers, whether he went into the Starbucks as he claimed and/or the deterrent effect any barriers that allegedly existed therein. These facts cannot be obtained by any other means and are highly probative of necessary elements of Plaintiff's claims against Starbucks and his standing to bring these claims. On this basis alone, Plaintiff's assertion of the work product doctrine is easily overcome—a fact that Judge Alsup noted in ordering the production of the intake forms. [September 11 Order p. 1, ln 26—p. 2, ln 2, "[P]laintiff must turn over all intake forms… * * *To the extent such materials contain privileged work product, this order finds that the materials are otherwise discoverable under FRCP 26(b)(1) and that defendant has shown that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."]

### (c) Plaintiff's Records Are Mere Business Records

Plaintiff's notes do not fall under the work product doctrine because they were prepared in the normal course of Plaintiff's business, rather than in anticipation of litigation. Though Plaintiff may be a member of the California bar, his business is not the practice of law. Rather, he is a professional plaintiff whose job is to accumulate perceived ADA violations and transmit the claims to his counsel when he deems it in his interests to do so. [Opposition p. 1, ln. 1-3] His business—warehousing ADA violations—generates these intake forms *whether or not a lawsuit is anticipated*. Plaintiff's own testimony acknowledges as much:

```
18 Q.  Is it your custom and practice to make notes
19  following a visit to a business that you believe has
20  accessibility violations?
21 A. Well, obviously not all businesses that have
```

22  violations, but some locations, yes.
[Deposition of Scott Johnson, p. 7, ln 18-22]

A document "generated in the normal course of business even if no litigation was anticipated" is not covered by the work product doctrine. *U.S. v. ChevronTexaco Corp.* (N.D. Cal. 2002) 241 F.Supp.2d 1065, 1082. Plaintiff's notes were not made in anticipation of litigation, they contain no legal reasoning or analysis and just catalogue his visit to the Starbucks at issue in this case, whether or not he intended to bring an action based on that visit. Plaintiff cannot shield these materials from discovery.

### 2. Any Privilege That May Have Existed Has Been Waived

In addition, to the extent that any privilege *could* have existed, Plaintiff has waived the privilege by failing to maintain a privilege log. *Apple Inc. v. Samsung Electronics Co., Ltd.* (N.D. Cal. 2015) 306 F.R.D. 234, 237.

### III. CONCLUSION

Based on the foregoing, Defendant Starbucks Corporation respectfully moves this Court to set aside its October 17, 2018 Order granting in part and denying in part Plaintiff's motion for summary judgment, to order the production of Plaintiffs' intake forms relating to the Starbucks location at issue in this case, to order the production of a list of other businesses he visited or drove by on the dates he allegedly visited this Starbucks, and to permit further briefing and argument on Plaintiff's motion for summary judgment.

DATED: December 7, 2018          BURNHAM BROWN

/s/ Cathy L. Arias
CATHY L. ARIAS
MICHELLE D. JEW
PATRICK M. CALLAHAN
ARTHUR S. GAUS
Attorneys for Defendant
STARBUCKS CORPORATION

4845-1531-6354, v. 1